IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIE ROBINSON,<br>    *Plaintiff*,<br><br>v.<br><br>LANCASTER COUNTY PRISON &<br>EMPLOYEES, *et al.*,<br>    *Defendants*. | :<br>:<br>:<br>:   CIVIL ACTION NO. 25-CV-3386<br>:<br>:<br>:<br>: |

**MEMORANDUM**

**Pappert, J.**                                                                                                   **September 23, 2025**

Willie Robinson filed a *pro se* Complaint asserting constitutional claims pursuant to 42 U.S.C. § 1983. Robinson, who was a pretrial detainee incarcerated at the Lancaster County Prison when he filed the case, also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Robinson leave to proceed *in forma pauperis* and dismiss the Complaint.

I[1]

Robinson describes Defendants "Lancaster County Prison and employees, including correctional officers, lieutenants, inmates, and counselors," Lancaster County Public Defender Patrick Manley, and the Lancaster County Clerk of Court. (Compl. at 1.) Robinson alleges his due process rights have been violated for a variety of reasons

---

[1] Robinson's Complaint consists of eight handwritten pages. (ECF No. 2.) The Court considers the entirety of the submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

1

during his confinement at the Lancaster County Prison ("LCP").[2] (*Id*. at 2-7.) Robinson alleges that on May 2, 2025, his "bail was revoked for refusing to wear a scram bracelet almost 2 years after being charged" with driving under the influence. (*Id*. at 1.) He appears to take issue with the scram bracelet[3] because it is used to "detect alcohol" and not marijuana, the underlying substance for his charge. (*Id*.) He claims that his right to appeal his bail revocation "was taken by P.D. Manley," who refused to file an appeal, and LCP, which refused to give him a pen and an envelope to do so. (*Id*.) He alleges he had to wait over thirty days to get an "indigent package" that included a pen and an envelope. (*Id*. at 2.) He further alleges that the Clerk of Court, presumably of Lancaster County, refused to answer his emails and accept a *habeas corpus* case he filed on an electronic tablet. (*Id*. at 1-2.) He also claims that Manley is "severely ineffective," refusing to file motions on his behalf, and Manley and the prison failed to take him to his status conference on May 19, 2025, in violation of his rights under the Pennsylvania Constitution.[4] (*Id*. at 7.)

---

[2] A review of public records reveals that Robinson was found guilty and sentenced to a twenty-three-month term in the Lancaster County Court of Common Pleas for a second offense of driving under the influence of a controlled substance and related drug charges and traffic offenses on September 10, 2025. *Commonwealth v. Robinson*, CP-36-CR-0004644-2023 (C.P. Lancaster).

[3] The Court understands he is referring to the brand name of a continuous alcohol monitoring device. *See* https://www.scramsystems.com/monitoring/scram-continuous-alcohol-monitoring/ (last accessed: Sept. 19, 2025.)

[4] "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*). As there is no private right of action for damages, any claims brought under the Pennsylvania Constitution will be dismissed as legally frivolous. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution").

Because Manley and the prison took his "constitutional rights away" and stopped him from accessing the courts to file his appeal, "the abuse made [him] check into the hole," also known as the Restricted Housing Unit ("RHU").[5] (*Id*. at 2.) He was in the RHU from approximately May 9 to May 19, 2025. (*Id*. at 6.) He was then transferred to the Mental Housing Unit ("MHU") from approximately May 20 until June 10. (*Id*.) During his time in the MHU, "rats and mice were running in and out of [his] cell daily" frightening him "to the max." (*Id*. at 2.) He was "shaken and couldn't stop staring at the floor." (*Id*.) On May 13, 2025, he alleges that the "jail had put up a memo about the water being dirty," but the inmates in the hole and MHU did not receive this notice, and he drank "yellow water." (*Id*.) After complaining about being ill, a nurse "took [his] sick call." (*Id*.) He claims on May 15, he "made CO Kleiser take a picture of the yellow liquid." (*Id*. at 3.)

He next claims that Correctional Officer Jones and other correctional officers called him names and put hair in his food. (*Id*.) Robinson also filed a complaint pursuant to the Prison Rape Elimination Act ("PREA") because his cellmate masturbated in front of Robinson, but "the lieutenant" told him that there was nothing wrong with the cellmate's actions and dismissed his complaint. (*Id*. at 3.) He filed more PREA complaints because another inmate made sexual gestures at him on several occasions.[6] (*Id*. at 4.)

---

[5] Robinson alleges he was in the RHU and the Mental Health Unit throughout his Complaint. The Court understands this allegation occurred while he was in the RHU.

[6] While the PREA "was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." *See Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31,

3

At some point while in the RHU, Robinson had a mental breakdown and wanted to kill himself, so he was placed on suicide watch and moved to a cell in the MHU for thirty days that was behind pillars that blocked his view. (*Id*. at 3-4.) While he was on suicide watch, he claims that he was "harassed and tortured." (*Id*. at 5.) He alleges that Correctional Officers Dobbs, Kleiser, Brollins, and Kile were the "main COs sexually harassing" him, directly and indirectly. (*Id*.) He filed "plenty" of grievances. (*Id*.) He also asserts there is evidence on an electronic tablet, presumably the device he used to file his grievances, and that many of his allegations are "written down in the Mental Health Counselor's Report." (*Id*. at 6.) He did not attach a copy of any grievances he filed or the report to his Complaint.[7]

Robinson does not specify the relief requested as a result of these events other

---

2017); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action"); *Frederick v. Snyder Cnty. Prison*, No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (same). Thus, Robinson cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983." *See Bowens v. Emps. Of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017). Moreover, to the extent he challenges the quality of the investigation into his PREA complaints, he has no freestanding right to such an investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."). Accordingly, any claims premised upon violations of the PREA must be dismissed as a matter of law.

[7] It is unclear if Robinson intended to bring constitutional claims against prison employees based on the handling of prison grievances. If he did intend to bring such claims, they are dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).

than he needs "help immediately." (*Id*. at 8.) He states he is "claiming *habeas corpus*" (*id*. at 7) and filed a Motion for a Preliminary Injunction after he filed his Complaint, requesting the Court to release him from Lancaster County Prison "immediately on conditional release."[8] (ECF No. 6. at 3.)

II

The Court grants Robinson leave to proceed *in forma pauperis*.[9] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[8] The Court denies Robinson's motion for a preliminary injunction ordering his release. His only avenue for that type of relief in federal court is through a *habeas* petition <u>after</u> exhausting state remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (stating that a § 1983 complaint that seeks release may not proceed because the proper vehicle for such claims is a petition for writ of *habeas corpus*); *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) ("Where a petitioner seeks release from detention, habeas (not a § 1983 action seeking release) is proper."). The same is true to the extent he intends to challenge his state conviction on the ground of ineffective assistance of counsel. *See Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (*per curiam*) ("The portions of Davis's complaint that . . . charge his attorney with constitutionally inadequate representation, and challenge his sentence fall squarely within *Preiser* and cannot be brought under § 1983.").

[9] The Court initially denied *in forma pauperis* status because Robinson failed to provide a copy of his institutional account statement. (*See* ECF No. 4.) That defect has now been cured. (*See* ECF No. 5.) However, because Robinson is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Robinson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

6

III

The Court understands Robinson to allege claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207)).

A

The § 1983 claims against the LCP will be dismissed because a prison is not a "person" under Section 1983. *See Beaver v. Union Cnty. Pennsylvania*, 619 F. App'x 80, 82 (3d Cir. 2015) (*per curiam*) (affirming dismissal of claims against Northumberland County Prison because the prison may not be considered a "person" subject to suit under 42 U.S.C. § 1983) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)); *see also Sanabria v. St. Lukes Hosp. (Sacred Heart Campus),* No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *Miller v. Curran-Fromhold Corr. Facility*,

No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).

B

Robinson brings claims against Public Defender Manley, an attorney who represented him in his state case, for alleged ineffective representation such as failing to file motions on his behalf. (*See* Compl. at 1-2, 7.) "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); s*ee also Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (*per curiam*) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him.").

Because public defenders are not state actors "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," *Dodson*, 454

8

U.S. at 325 (footnote omitted), Manley is not subject to liability under § 1983 and Robinson's claims against him are not plausible. *See Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (*per curiam*) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."). These claims will be dismissed with prejudice.

C

Robinson alleges an access to courts claim based on LCP's refusal to give him a pen and an envelope for over thirty days, which resulted in him not being able to file an appeal to his bond revocation. (*Id.* at 2.) Even though, as already explained, LCP is not a proper defendant, these claims would still fail even if he had named a proper defendant.[10] These allegations are best construed as a claim for denial of access to the courts under the First and Fourteenth Amendment. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.").

---

[10] Robinson naming "Lancaster County Employees" as a defendant without specifying who the persons that allegedly violated his rights are does not properly state claims against them. As mentioned above, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how <u>each defendant</u> was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207. Furthermore, where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the defendants as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"). The Court will terminate "Lancaster County Employees" as a defendant.

9

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. Furthermore, the right to access the courts may be satisfied if the pretrial detainee had an attorney "because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" *Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*) (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Diaz,* 532 F. App'x at 63 (*per curiam*) (stating that an access-to-courts right "may be satisfied . . . by appointing [the plaintiff] an attorney").

Robinson's claim is not plausible because he was represented by counsel, Manley, in his criminal matter when his bond was revoked. *See Robinson*, CP-51-CR-0008364-2021. Robinson cannot state a plausible claim for denial of access to courts since he was represented by counsel in his criminal case during the time he claims to

10

have been prevented from filing an appeal to his bond revocation. *See Prater*, 542 F. App'x at 137 n.4; *see also Diaz*, 532 F. App'x at 63; *Roman v. Union Cnty. Jail*, No. 16-1049, 2017 WL 498715, at *5 (D.N.J. Feb. 7, 2017) (denying access-to-courts claim for pretrial detainee to the extent the plaintiff was represented by counsel in his criminal proceedings); *Hurdle v. Dantos*, No. 20-5595, 2020 WL 6747293, at *6 (E.D. Pa. Nov. 17, 2020) (denying claim for access to legal research in part because the pretrial detainee was represented by counsel). Accordingly, Robinson's access-to-courts claim will be dismissed without prejudice. Because he may be able to allege additional facts why he was otherwise denied access to the courts even though he had counsel, Robinson will be given leave to amend this claim.

D

Robinson asserts that the Lancaster County Clerk of Court refused to answer his emails and accept a *habeas corpus* case he filed. Courts have held that clerks of court and clerk's office employees enjoy absolute immunity and quasi-judicial immunity when performing duties required by statute or at the direction of judicial authority. *See e.g.*, *Lucarelli v. Norton*, No. 06-53, 2006 WL 709319, at *7 (M.D. Pa. Mar. 17, 2006); *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991) (noting that courts have held that clerks of court are entitled to immunity the same as judges); *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989) (holding that absolute immunity extends to court clerk because he was a "nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge"); *Mercedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("In addition to the recognized immunity enjoyed by

11

judicial and quasijudicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit.").

Robinson's claim that the Lancaster County Clerk of Court acted to violate his rights is entirely undeveloped. He alleges only that the Clerk of Court "refused to answer emails for 3 weeks" and "did not accept" a *habeas corpus* he filed. (Compl. at 1-2.) As pled, the Complaint does not allege sufficient facts to suggest plausibly how the Clerk of Court violated Robinson's constitutional rights. He has not alleged facts that describe when this happened and if he was represented by counsel at the time, the legal significance of the emails, or what specific actions the Clerk of Court took outside his authorized functions when allegedly failing to accept Robinson's filing. Robinson will, however, be granted leave to amend on this claim.

E

Robinson also attempts to frame an Eighth Amendment claim based on sexual abuse allegations. Sexual abuse and harassment violate an inmate's rights under the Eighth Amendment. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Whether sexual abuse of inmates by prison officials offends the Eighth Amendment is a matter of first impression in our Court. Today, we join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution."). But an Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. *Id.* at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual *contact*.") (emphasis added); *Williams v. Wetzel*, 776 F. App' x 49, 53 (3d Cir. 2019)

(affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); *McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation") (internal quotations omitted) (citing cases); *Washington v. Gilmore*, No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any " direct physical contact" with the alleged perpetrators), *report and recommendation adopted by*, 2017 WL 4155421 (W.D. Pa. Sept. 18, 2017). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain*, 2018 WL 1211507, at *3 (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)).

Robinson claims conclusorily that he was "harassed and tortured" while in the MHU and that non-Defendants Correctional Officers Dobbs, Kleiser, Brollins, and Kile were the "main COs sexually harassing" him. (Compl. at 5.) The details of sexual harassment allegations are undeveloped, including when it happened, how the interactions occurred, and whether the harassment was verbal or involved direct physical contact. Because Robinson does not allege any physical contact of a sexual nature, this claim is also not plausible.

F

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Prison

13

officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (internal citations omitted), *abrogation on other grounds recognized by Fisher*, 115 F.4th 197; *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."). Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion,"

14

courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Robinson generally asserts unsanitary conditions while in the RHU and MHU,[11] including dirty water, rodents in his cell, and hair in his food. (*See* Compl. at 2-3.) Deprivation of drinking water can satisfy the objective component of a plausible unconstitutional punishment claim. *See Gibson v. Crouch*, No. 20-2021, 2022 WL 7352267, at *2-3 (3d Cir. Oct. 13, 2022) (*per curiam*); *see also Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) ("[T]here is no doubt that potable water constitutes a basic human need."); but *compare Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 220, 228-29 (3d Cir. 2015) (holding that a complete lack of potable water for three days "other than the water in a toilet bowl . . . poses a clear substantial

---

[11] Although Robinson explains he was placed in the MHU for suicide watch, it is unclear why he was placed in the RHU. The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian*, 696 F.3d at 375 (abrogation on other grounds recognized by *Fisher*, 115 F.4th at 197 (3d Cir. 2024)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson,* 495 F.3d at 70. If he intended to make a claim for placement in the RHU, he will be given an opportunity to do so if he chooses to file an amended complaint.

15

risk of serious harm to an inmate" and that inmate who did not have water in her cell and who was told to drink from the toilet bowl when she requested water stated a claim (quotations omitted)) *with Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (*per curiam*) (holding that the deprivation of running water in cell for 77 hours was not sufficiently serious where plaintiff had access to "fluids such as milk each morning, and he never asked staff for water or fluids" and was constantly monitored); *see also Alpheaus v. Camden Cnty. Corr. Facility*, No. 17-0180, 2017 WL 2363001, at *14 (D.N.J. May 31, 2017) (concluding that plaintiff failed to state a claim based on his non-specific allegation of "no running water"); *Gardner v. Lanigan*, No. 137064, 2018 WL 4144689, at *4 (D.N.J. Aug. 30, 2018) ("While denial of access to drinking water can be an Eighth Amendment violation, here, it is not clear whether Plaintiff had access to alternative sources of water, nor how long water was denied to him.") (citation omitted).

Robinson alleges that on May 13, 2025, the "jail had put up a memo about the water being dirty," but the inmates in the MHU did not receive this notice and he drank "yellow water." (Compl at 2.) After complaining about being ill, a nurse "took [his] sick call." (*Id.*) He claims two days later, on May 15, he "made CO Kleiser take a picture of the yellow liquid." (*Id.* at 3.) While the lack of potable water to provide hydration can satisfy the objective component, as an initial matter, Robinson does not name a defendant who was personally responsible for the dirty water he claims made him ill. He only asserts that after he began feeling ill, he told Correctional Officer Kleiser. To the extent he intended to name Kleiser as a defendant, he does not allege Kleiser knew about the dirty water prior to May 15 when he fell ill or what happened after he was informed about the water. He also does not allege that Kleiser was

16

personally responsible for the presence of dirty water, explain the extent of his illness, if other inmates also fell ill, how long the water was dirty, or if he had alternative sources to remain hydrated. Even had he named a proper defendant, the Complaint further fails to allege facts sufficient to meet the subjective component of the unconstitutional punishment analysis from which one could infer that the prison's employees in the RHU had reason to know that the water at the prison was dirty, but opted to do nothing.

Robinson's conclusory allegations involving rodents in his cell and hair in his food fares no better. He does not allege specific facts regarding the severity of these alleged conditions sufficient to infer that his conditions of confinement rise to the level of an objectively serious deprivation to constitute a due process violation. Certain unsanitary conditions, while uncomfortable or unpleasant, may not rise to the level of sufficiently serious or punitive in nature to state a plausible claim. *See, e.g., Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *4-5 (E.D. Pa. Feb. 12, 2014) (concluding that while the presence of insects in prison was uncomfortable, plaintiff had not "demonstrated an unconstitutional threat to his health and safety"); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (infestation with roaches, spiders, worms, gnats, mice, and other unknown insects was uncomfortable but not unconstitutional); *Hill v. Smith*, No. 05-1724, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (concluding that mice and cockroaches in the cell are " admittedly uncomfortable conditions [that] . . . do not, by themselves articulate a situation that could be characterized as cruel and unusual punishment" ). Additionally, food tampering has been found not to state a claim where no physical injury has been

17

alleged. *See Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015) (no Eighth Amendment claim stated where inmate did not allege that he ate the contaminated food and suffered injury as a result); *see also DeJesus v. Carey*, No. 15-2504, 2016 WL 6134540, at *3 (M.D. Pa. Oct 20, 2016) (citing *Rieco* and finding no claim stated where plaintiff did not allege he suffered a physical injury where guard allegedly spit in his meal). Even if he had alleged more specifics regarding these conditions, Robinson again fails to allege a defendant who was personally responsible for the alleged violations. Without more, his sparse allegations about isolated incidents fail to state a claim because they do not plausibly assert that the conditions of confinement at LCP amounted to punishment or deprived him of any basic human need for a significant period of time. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."). Accordingly, Robinson fails to state plausible conditions of confinement claims related to the dirty water, rodents, and hair in his food at the prison. However, because he may be able to allege additional facts sufficient to state a claim against a defendant who was personally involved, he will be granted leave to amend his claims. In an amended complaint, Robinson should allege facts regarding the severity of the alleged conditions, the degree to which he was exposed to these conditions, and the extent to which he was harmed by each, with as much specificity as possible.

IV

For the foregoing reasons, the Court will grant Robinson leave to proceed *in forma pauperis*. All claims against LCP and Public Defender Manley, any claims based

on grievances, and any claims premised upon violations of the PREA or the Pennsylvania Constitution will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile"). His remaining claims will be dismissed without prejudice. Robinson will be allowed to file an amended complaint if he is capable of curing the defects the Court has identified in the claims dismissed without prejudice. If Robinson chooses to file an amended complaint, he is reminded that he <u>must identify all defendants in the caption of the amended complaint in addition to identifying them in the body of the amended complaint and shall state the basis for his claims against each defendant.</u>

    An appropriate Order follows denying the motion for a preliminary injunction and providing further information about options for proceeding in this case.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**