### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIE ROBINSON, | : | |
|    *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-3386 |
| | : | |
| LANCASTER COUNTY PRISON & | : | |
| EMPLOYEES, *et al.*, | : | |
|    *Defendants*. | : | |

### MEMORANDUM

**Pappert, J.**                                                                     **January 14, 2026**

     *Pro se* Plaintiff Willie Robinson filed an amended complaint, alleging constitutional claims pursuant to 42 U.S.C. § 1983 for events that occurred while he was incarcerated as a pretrial detainee at the Lancaster County Prison. The Court will dismiss the Amended Complaint.

I[1]

     In his initial Complaint, Robinson named as defendants the "Lancaster County Prison and employees, including correctional officers, lieutenants, inmates, and counselors," Lancaster County Public Defender Patrick Manley, and the Lancaster County Clerk of Court. (See Dkt. No. 2 at 1.) Robinson alleged his due process rights had been violated in a variety of ways during his confinement at the LCP. (*Id.* at 2-7.)

---

[1] Robinson's Amended Complaint consists of three typewritten pages. (Dkt. No. 11.) The Court considers the entirety of the submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. Unless otherwise indicated, the factual allegations set forth in this Memorandum are taken from the Amended Complaint. Where the Court quotes from *pro se* submissions, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

In a September 23, 2025, Memorandum and Order, the Court granted Robinson leave to proceed *in forma pauperis* and dismissed his Complaint for failure to state a claim. *See Robinson v. Lancaster Cnty. Prison & Emps.*, No. 25-3386, 2025 WL 2712219, at *5 (E.D. Pa. Sept. 23, 2025). The dismissal was in part with prejudice and in part without prejudice. (*Id.* at 2.) All claims against the LCP, Manley, any claims based on grievances, and any claims premised upon violations of the Prison Rape Elimination Act ("PREA") or the Pennsylvania Constitution were dismissed with prejudice. (*Id.*) All other claims were dismissed without prejudice. (*Id.*)

The first claim the Court dismissed without prejudice was for denial of access to the courts against the LCP under the First and Fourteenth Amendments because he was not given a pen and an envelope for over thirty days, which he claims prevented him from filing an appeal of his bond revocation. *Robinson*, 2025 WL 2712219, at *5. The Court dismissed this claim because a prison is not a "person" under Section 1983. *Id.* at *4 (citing cases). The Court also noted that Robinson collectively naming "Lancaster County Employees" as a defendant without specifying who the person or persons that allegedly violated his rights were failed to state proper claims against them. *Id.* at *5 n.10. The Court explained, at least twice throughout its Memorandum, that "in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims." *Id.* at *4, and *5 n.10 (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)). The Court still addressed this claim on the merits, finding that even had Robinson named a proper defendant, because he was represented by Manley when his

bond was revoked,[2] he could not "state a plausible claim for denial of access to courts since he was represented by counsel in his criminal case during the time he claims to have been prevented from filing an appeal to his bond revocation." *Id*. at *5 (citing cases.)  The Court dismissed his access-to-courts claim without prejudice, but allowed him leave to amend this claim since he "may be able alleged additional facts why he was otherwise denied access to the courts even though he had counsel." *Id*.

The second claim dismissed without prejudice was against the Lancaster County Clerk of Court for allegedly refusing to answer Robinson's emails for three weeks and not accepting a *habeas corpus* case he attempted to file. *Id*. at *6.  The Court found this claim "entirely undeveloped" as Robinson did "not allege sufficient facts to suggest plausibly how the Clerk of Court violated Robinson's constitutional rights." *Id.*  When dismissing the next claim under the Eighth Amendment for sexual abuse and harassment allegations based on conclusory allegations that he was harassed, tortured, and sexually harassed by non-defendant Correctional Officers, the Court found the details of the "sexual harassment allegations [were] undeveloped, including when it happened, how the interactions occurred, and whether the harassment was verbal or involved direct physical contact." *Id*. at *6.  The Court reiterated that "an Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator." *Id*. (citing *Ricks v. Shover*, 891 F.3d 468, 471 (3d Cir. 2018)).  Lastly, the Court dismissed Robinson's Fourteenth Amendment conditions of confinement claims generally asserting unsanitary conditions at the LCP, including dirty water, rodents in his cell, and hair in his food, for failing to identify a defendant

---

[2] *See Commonwealth v. Robinson,* CP-36-CR-0004644-2023 (C.P. Lancaster).

who was personally responsible for the alleged violation. *Id*. at *7-8. The Court found that even if Robinson had named a proper defendant, "[w]ithout more, his sparse allegations about isolated incidents fail to state a claim because they do not plausibly assert that the conditions of confinement at LCP amounted to punishment or deprived him of any basic human need for a significant period of time." *Id.* at *8 (citation omitted).

The Court gave Robinson leave to amend this claim to name a defendant who was personally involved and instructed that in an amended complaint, he "should allege facts regarding the severity of the alleged conditions, the degree to which he was exposed to these conditions, and the extent to which he was harmed by each, with as much specificity as possible." *Id.* Robinson was allowed to file an amended complaint as to the claims dismissed without prejudice, but the Court specifically ordered that he "may **NOT** reassert any claim that has already been dismissed with prejudice." (Dkt. No. 8 at 3 (emphasis in original.)) He ultimately filed the pending amended complaint.[3]

The Amended Complaint's factual allegations are again sparse. Robinson names Defendants Lancaster County, the Warden of LCP, John Doe Correctional Officers 1-10, Jane Doe Medical Staff 1-5, and Jane/John Doe Mental Health Unit ("MHU") Counselor. (Am. Compl. at 1.) Although Robinson names different defendants, many of

---

[3] Robinson was ordered to file his amended complaint within thirty days from the date of the Court's September 23, 2025, Order. (Dkt. No. 8 at 2.) Robinson subsequently filed a Motion for Reconsideration because he did not want the Court to rule on his claims dismissed with prejudice before he had an attorney and requested the Court to appoint him counsel. (Dkt. No. 9.) The Court denied his request for reconsideration and allowed him additional time to file his amended complaint. (Dkt. No. 10.) The Court also denied as premature his request for counsel. (*Id*.) On November 18, 2025, Robinson filed his Amended Complaint. (Dkt. No. 11.)

his claims are similar to those in his first Complaint. He generally alleges that Lancaster County "oversees the operation, staffing and supervision, policies, and practices of the LCP," and the Warden "was responsible for safety, operations, and supervision of staff at the LCP." (*Id*.) He asserts that in May 2025, his "cell sink produced yellow, contaminated water," and he was ignored by John Doe Correctional Officer 1 when he requested clean water. (*Id*.) He claims he "drank the contaminated water and became ill." (*Id*.) Next, he alleges he "repeatedly found hair placed in his food by John Doe CO 2 and other Doe officers." (*Id*. at 2.) He further alleges that from May 20 through June 10, 2025, his "MHU" cell [apparently a "Mental Health Unit" cell, but not explained] was infested with rats and mice and "nothing was done" when he reported it to John Doe Correctional Officers 3 and 4. (*Id*.)

Robinson also asserts harassment and sexual harassment claims. (*Id*.) He alleges that while he was in the RHU [Restricted Housing Unit] and MHU, John Doe Correctional Officers 5 and 6, Jane/John Doe MHU Counselor, and other officers, "harassed, threatened, and verbally abused" him, and he "suffered sexual harassment from staff." (*Id*.) He was in the RHU from May 9 to 19, 2025, and at some point later was placed in the MHU "behind pillars blocking his view." (*Id*.) While he was on suicide watch, he alleges John Doe Correctional Officers "taunted and harassed him." (*Id*.) He further claims his "cellmate masturbated in his presence" and John Doe Correctional Officers 7 and 8 failed to protect him by ignoring "his reports."[4] (*Id*.)

---

[4] Robinson asserted a similar claim in his initial Complaint. (*See* Dkt. No. 2 at 3-4.) The Court understands his failure to protect claim to be based on "his reports" made under the PREA. This claim has already been dismissed with prejudice, *Robinson,* 2025 WL 2712219, at *2 n.6. *See Bowens v. Emps. of the Dep't of Corr.,* No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel,* 674 F. App'x 133, 137 (3d Cir. 2017) (the plaintiff cannot "bring a private action to enforce obligations set forth in the

5

Robinson also avers he was denied his right to access to the courts when he tried to appeal his May 2, 2025, bail revocation and "staff denied indigent supplies for over 30 days" and "blocked or ignored his filings and attempts to submit *habeas* petitions." (*Id.*)

As a result of these events, Robinson claims he "suffered illness, emotional harm, mental deterioration, fear, anxiety, and legal injury." (*Id.*) He brings claims under the Eighth Amendment for inhumane conditions and deliberate indifference to mental health needs, and a First Amendment claim for denial of access to the courts. (*Id.*) He requests money damages and unspecified declaratory and injunctive relief. (*Id.*)

II

Because Robinson is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether an amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that amended complaint, liberally construed, contains facts sufficient to state a plausible claim.

---

PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983.").

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Robinson is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).

### III

Robinson asserts his constitutional claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A

Robinson again alleges he was denied his right to access to the courts when he tried to appeal his bail revocation and "staff denied indigent supplies for over 30 days" (Am. Compl. at 1), but he again fails to name a proper defendant for this claim.  He also

claims staff "blocked or ignored his filings and attempts to submit *habeas* petitions."[5] (*Id.*) As explained above and in the Court's prior Memorandum, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). The Court also explained that grouping defendants together, as Robinson does here by generally alleging actions by "the staff," without specifying those who allegedly violated his rights does not properly state claims against them. *See Robinson*, 2025 WL 2712219, at *5 n.10 ("where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the defendants as a group without clarifying the specific basis for each Defendant's liability.") (citing *Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").

Furthermore, even had Robinson named a proper defendant, as the Court previously explained to him, the right to access the courts may be satisfied if the pretrial detainee had an attorney "because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" *Robinson*, 2025 WL 2712219, at *5 (citing *Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*) (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also*

---

[5] He made a similar claim in his initial Complaint against the Lancaster Clerk of Court, but appears to have abandoned it.

*Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (stating that an access-to-courts right "may be satisfied . . . by appointing [the plaintiff] an attorney")). The Court gave Robinson an opportunity to amend this claim to allege additional facts why he was otherwise denied access to the courts even though he had counsel, but he failed to do so and has not cured the defect related to his bail revocation claim where he was represented by counsel. *See Robinson*, CP-51-CR-0008364-2021. As the claim relates to the allegation that his *habeas* petitions were ignored or denied, it is unclear if he was represented by counsel at that time. Regardless, even had he named a proper defendant or was not represented by counsel, this claim also fails because the Amended Complaint does not allege sufficient facts to plausibly suggest that Robinson suffered an actual injury – *i.e.,* that the petition had merit, and thus how the alleged denial of filing the *habeas* petitions violated Robinson's constitutional rights.

B

When the Court dismissed Robinson's initial claims for sexual abuse and harassment it explained that such claims require a showing of physical contact with the alleged perpetrator. *See Robinson,* 2025 WL 2712219, at *6 (citing *Williams v. Wetzel*, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer)); *see also McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation") (internal quotations omitted) (citing cases); *Washington v. Gilmore*, No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault

9

claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators), *report and recommendation adopted by*, 2017 WL 4155421 (W.D. Pa. Sept. 18, 2017). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain*, 2018 WL 1211507, at *3 (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)).

In his Amended Complaint, Robinson conclusorily contends he was "harassed, threatened, and verbally abused" by certain John Doe Defendants, he "suffered sexual harassment from staff," and he was "taunted and harassed" on suicide watch.[6] (Am. Compl. at 2.) The details of his sexual harassment allegations are again entirely undeveloped, including when it happened, how the interactions occurred, and whether the harassment was verbal or involved direct physical contact. Because Robinson does not allege any physical contact of a sexual nature, these claims again fail.

C

Robinson next reasserts a claim, previously dismissed as implausible,[7] based on unsanitary conditions at the LCJ, specifically for dirty water, rodents in his cell, and

---

[6] Although Robinson cites to a deliberate indifference to mental health needs, the factual allegations are best construed as Eighth Amendment claims based on sexual abuse and harassment. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").

[7] The Court previously explained to Robinson that to establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Robinson,* 2025 WL 2712219, at *7 (citing *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was

hair in his food (*see* Am. Compl. at 1-2), *Robinson,* 2025 WL 2712219, at *7. The Court instructed Robinson that an amended complaint "should allege facts regarding the severity of the alleged conditions, the degree to which he was exposed to these conditions, and the extent to which he was harmed by each, with as much specificity as possible." *See id.* at *8. As previously acknowledged, a deprivation of drinking water can satisfy the objective component of a plausible unconstitutional punishment claim. *See id.* at *7 (collecting cases setting forth the factors relevant to a denial of drinking water claim).

The Amended Complaint's allegations are even more sparse than those in the initial Complaint. Robinson asserts only that in May 2025, his "cell sink produced yellow, contaminated water," and he was ignored by John Doe Correctional Officer 1 when he requested clean water. (Am. Compl. at 1.) He claims he "drank the contaminated water and became ill." (*Id.*) Robinson fails again to allege whether John Doe Correctional Officer 1 was personally responsible for the presence of dirty water, explain the extent of his illness, if other inmates also fell ill, or for how long the dirty water condition was present. Robinson also fails to allege if he had alternative sources to remain hydrated, which further fails to allege facts sufficient to meet the subjective component of the unconstitutional punishment analysis from which one could infer that John Doe Correctional Officer 1 had reason to know that his only drinking water was dirty, but opted to do nothing. He has, accordingly, failed to cure the defect previously identified in this claim.

---

sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

11

Robinson's reasserted claims involving rodents in his cell and hair are again brief and conclusory and do not allege specific facts regarding the severity of these alleged conditions which could allow the Court to infer that his conditions of confinement rise to the level of an objectively serious deprivation to constitute a due process violation.  When dismissing similar claims in his initial Complaint, the Court explained that certain unsanitary conditions, while uncomfortable or unpleasant, may not rise to the level of sufficiently serious or punitive in nature to state a plausible claim.  *Robinson,* 2025 WL 2712219, at *8 (collecting cases setting forth the factors relevant to these types of rodent infestation and contaminated food conditions of confinement claims).  Robinson alleges he "repeatedly found hair placed in his food by John Doe CO 2 and other Doe officers." (Am. Compl. at 2.)  He further alleges that from "May 20 through June 10, 2025, [his] MHU cell was infested with rats and mice" and "nothing was done" when he reported it to John Doe COs 3 and 4.  (*Id.*).  Robinson again fails to allege he suffered a physical injury from these conditions.  These sparse allegations do not plausibly assert that the conditions of confinement at the LCP amounted to punishment or deprived him of any basic human need for a significant period of time.  *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.").

D

Robinson generally alleges that Lancaster County "oversees the operation, staffing and supervision, policies, and practices of the LCP," and the Warden "was responsible for safety, operations, and supervision of staff at the LCP." (Am. Compl. at

12

1.) As an initial matter, a municipality, like Lancaster County, is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, but this liability extends only to "their *own* illegal acts" (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to plead a § 1983 claim against a municipality or municipal entity, a plaintiff must allege that the municipality or municipal entity's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). But "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable")). Because Robinson has failed to plead any plausible underlying constitutional violation,

it is inconceivable that the claim against Lancaster County is plausible and will be dismissed.

Robinson's claim against the Warden will be dismissed for similar reasons. He does not allege any specific facts about the Warden's involvement in his claims and appears to sue the Warden based solely on his supervisory position at LCP. However, because he has not stated an underlying constitutional violation, there is no basis for liability against the Warden. In any event, generalized allegations like those here that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *See Chavarriaga,* 806 F.3d at 227. Thus, the mere fact that the Warden was "in charge" of the LCJ would not state a plausible claim even had Robinson alleged an underlying constitutional violation.

IV

For the foregoing reasons, the Court will dismiss Robinson's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Since Robinson was already given an opportunity to amend his claims and failed to cure the defects the Court identified, he will not be given further leave to amend and these claims will be

dismissed with prejudice.  *See Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (*per curiam*) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.").

A final dismissal Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

*/s/ Gerald J. Pappert*

**Gerald J. Pappert, J.**